ANGELA SARNO *et al.*, Plaintiffs-Appellants, v. PAUL THERMEN *et al.*,
Defendants-Appellees.

First District (2nd Division)   No. 1—90—3365

Opinion filed November 17, 1992.—Rehearing denied January 22, 1993.

Bixby, Lechner & Potratz, P.C., of Chicago (Gary P. Hollander and Gregory Oltman, of counsel), for appellants.

Rudnick & Wolfe, of Chicago (William M. McErlean and Fredric A. Cohen, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiffs appeal from the judgment of the circuit court dismissing their action on the ground that it was barred by a prior judgment of the bankruptcy court.

Plaintiff Angela Sarno, a physical therapist, and Dr. Alfred Akkeron, an orthopedic specialist, formed a physical and occupational therapy service which they conducted under the name of Better Care, Ltd., and attorney Albert L. Grasso incorporated the enterprise for them. Originally, Sarno and Akkeron each owned 50% of the issued shares; however, Sarno became the sole officer, director and shareholder when it was discovered that Akkeron was prohibited from having any part in the corporation because he was not a licensed therapist. After a dispute arose between Sarno and Akkeron over the control of the business, Akkeron, Broadway Land Development Company[1] (owned by Akkeron), and defendant Evans, Marshall & Pease, P.C. (EMP), filed an involuntary bankruptcy petition against Better Care. Defendants Paul Thermen (Thermen) and Larry Beller (Beller) are principals of EMP. The bankruptcy judge granted a "directed verdict"[2] for the debtor and dismissed the petition for involuntary bankruptcy because of "a total lack of evidence that Better Care was generally not paying its debts as such debts became due." However, the bankruptcy court reserved jurisdiction on the issue of bad faith under section 303(i)(2) of the Bankruptcy Code (11 U.S.C. §303(i)(2) (1988)),

---

[1]Broadway Realty was later substituted for Broadway Land. *In re Better Care, Ltd.* (N.D. Ill. 1989), 97 Bankr. 405, 407 n.1.

[2]The rather quaint practice of granting "directed verdicts" in cases where the court sits without a jury is not explained in the briefs or in the record.

and in a subsequent ruling it found that each of the petitioning creditors had acted in bad faith in bringing the involuntary petition. After a further hearing on the issue of damages (*In re Better Care, Ltd.* (N.D. Ill. 1989), 97 Bankr. 405, 407), the court awarded Better Care almost all of the actual damages it sought and punitive damages as well. *Better Care*, 97 Bankr. at 414.

Thereafter, Sarno and Better Care filed a "Complaint for Constructive Trust and Other Relief" in circuit court against Akkeron, Broadway Real Estate Corporation (BRE), Broadway Orthopedics, Ltd. (BOL), Grasso, EMP, Thermen and Beller. Specifically, in count III of their complaint plaintiffs alleged that "Grasso and Akkeron engaged in a combination and conspiracy designed to damage and ultimately destroy the Better Care business and Sarno's interest therein." They alleged further that "Thermen, Beller and EMP \*\*\* knowingly participated in and furthered the aforesaid combination and conspiracy by joining in the Involuntary Bankruptcy Petition."

In ruling on defendants' motion to dismiss plaintiffs' original complaint, the court stated:

"I think collateral estoppel applies in this case because the claim that I read in the complaint is the same claim that Judge Katz tried in the Bankruptcy Court, I believe. And this turns on the interpretation of Paragraphs 35 and 36.

Basically, I see the claim that EMP, Thermen and Beller joined in the involuntary bankruptcy petition. And if there is something more to it, I do not believe it has been clearly pled.

The Bankruptcy Court is competent to hear the matters under Section 303 of 11 U.S. Code, but the complaint here charges the Defendants with no other wrongdoing than the wrongful bringing of the petition, the involuntary petition.

Accordingly, I think that the pleading here must be dismissed. And I will allow the Plaintiff the opportunity to replead the provisions."

Later, in count IV of their first amended complaint, plaintiffs alleged:

"33. Thereafter, Grasso, Akkeron, BRE, BOL, Thermen, Beller and EMP engaged in a combination and conspiracy designed to damage and ultimately destroy the Better Care business and to terminate and destroy Sarno's interest therein. These acts included the following:

a. Akkeron demanded that Sarno release all of her interest in Better Care;

b. Akkeron and BOL caused Better Care's computer system to be disconnected;

c. Akkeron and BRE locked Better Care out of its offices;

d. Akkeron stopped referring patients to Better Care for therapy and began providing therapy services through BOL through former Better Care employees;

e. Akkeron, as a purported creditor, EMP, as purported creditor, and Grasso's law firm, as attorneys, in bad faith filed an involuntary bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois.

34. As a result of the foregoing actions, the Better Care business has been destroyed. Akkeron and BOL have wrongfully and fraudulently kept for themselves profits which rightfully belonged to Better Care and Sarno. Sarno has lost the salary and perquisites associated with her position at Better Care, and the value of Sarno's stock interest in Better Care has been destroyed.

35. The improper motives, bad faith and malicious conduct of Akkeron, BRE, Thermen and EMP has been determined in the cause styled *In re Better Care, Ltd.*, 88 B 2658. The opinion in said case is reported at 97 B.R. 405, and a copy is attached hereto as Exhibit '1' and incorporated by reference herein."

In dismissing plaintiffs' first amended complaint, the court reasoned:

"Looking at Count 4 of the First Amended Complaint, it seems to me there's [*sic*] only two things stated against EMP, Evans, Marshall and Pease, and that comes in Paragraph 33(e), where it says: 'Akkeron, a purported creditor, EMP as purported creditor, and Grasso's law firm of attorneys, in bad faith filed an involuntary bankruptcy petition in the United States Bankruptcy Court,' et cetera.

Then in Paragraph 35, it says: The improper motives, bad faith and malicious conduct, of Akkeron, BRE, Thermen and EMP, have been determined to be—determined in the cause styled in re Better Care Limited, 88 B 2658, which I take it that's the bankruptcy action.

\* \* \*

So I don't see that the complaint, Count 4, alleges that EMP did anything except those two acts.

Now there is—let's see; I read that 33(e)—and I take it that the activities insofar as filing the involuntary bankruptcy peti-

tion in the court, was the subject of Judge Katz's ruling in the Bankruptcy Court; and whatever improper motives, bad faith and malicious conduct of EMP there might have been, was determined in that hearing."

At which point the following discussion ensued:

"MR. HOLLANDER: We agree. ***

Again, our point in all of this is Judge Katz could say to EMP: 'You did something wrong. You shouldn't have joined in the involuntary petition. My only jurisdiction is to award damages for the filing of the petition; those have proximately resulted from the filing of the petition.'

In this case we allege that that was an act in furtherance of the conspiracy with Dr. Akkeron and his companies, and with the law firm, and that the damages resulting from that are far beyond anything Judge Katz ever could have entertained.

THE COURT: Why? Is there some limit on the damages that he could order?

MR. HOLLANDER: Yes. He was limited to damages proximately resulting from the filing of the bankruptcy petition in favor of Better Care.

Now to just stand and say Miss Sarno is in privy [sic] with Better Care, I think begs the question, because in some regard she probably was; but there's no commonality of interest when you're talking about Miss Sarno's personal damages such as the conversion of her stock.

That was never before the Court. We couldn't implead her into the bankruptcy action, this individual into this corporate, involuntary bankruptcy, to try and recover the damages.

We also could not recover the damages for the destruction of the Better Care business that did not relate solely to the filing of the involuntary bankruptcy petition as was set forth.

THE COURT: As to those claims you have not charged EMP with doing those things.

MR. HOLLANDER: We claim them with legal responsibility for them under a conspiracy theory.

THE COURT: Paragraph 33: 'You're bound by a careful and strict reading of your complaint.'

33 charges conspiracy, but only 33(e) charges EMP.

I see no limitations insofar as the Bankruptcy Court's range of remedies or amount of judgment that limited the Bankruptcy Court in any way."

Plaintiffs assert that the bankruptcy court has no jurisdiction to adjudicate the State law issues raised in this case and that "[e]ven if the Bankruptcy Court had jurisdiction *** [it] exercised its discretion to abstain from hearing a dispute which raised only state law issues." In declining to determine Akkeron's setoff claim the bankruptcy court stated:

> "This Court observes that Akkeron has raised numerous claims for set-off in his petition in addition to the one based upon the $51,000 initial funding referred to in the March Opinion. These claims raise a plethora of state law issues, including a guarantor's right to subrogation and reimbursement and the duty to pay rent after a constructive eviction, just to name a few. These additional legal issues also raise additional factual issues for which there is no foundation in the record, unlike the $51,000 initial funding claim for which there is a foundation in the present record. Additionally, Better Care correctly points out that, once state law claims can be made, Better Care may have a few of its own. This Court can think of trade disparagement and intentional interference with business relationships, just to name a few, although this Court expresses no opinion as to the existence and/or merits of either party's claims, as pointed out on Page 25 of the March Opinion.

> In view of this Pandora's box Akkeron has decided to open, this Court is convinced that this is an appropriate occasion for this Court to abstain from any further adjudication of Akkeron's set-off claims. This Court has previously discussed the principles of abstention as they apply to this case in its original Findings of Fact and Conclusions of law, dated May 27, 1988, at Page 9. This Court believes those principles to be all the more applicable at this juncture because all that is left in this case are conflicting claims based solely upon state law issues. ***

> As a result this Court will deny Akkeron's Petition for Set-Off and will leave the parties to their state law remedies, if any." Memorandum Opinion, April 12, 1989.

Similarly, in declining to condition an award of damages under section 303(i) upon Better Care's delivering a general release to the petitioning creditors, who had requested it, the bankruptcy court stated, "Better Care may have numerous other state or federal causes of action against the petitioning creditors, none of which would be preempted or discharged by this judgment." (*Better Care*, 97 Bankr. at 415.) However, the court "expresse[d] no opinion regarding

the existence or merits of any additional claims of Sarno or Better Care or as to the application of the principle of *res judicata* or collateral estoppel to any such claim or claims." *Better Care*, 97 Bankr. at 416.

Defendants respond that plaintiffs' State law conspiracy claim against them is based solely on the wrongful filing of the involuntary petition and is therefore barred by the bankruptcy court's final judgment under the doctrines of *res judicata*, collateral estoppel, and election of remedies. In addition, they assert that section 303(i) of the Bankruptcy Code preempts a State law remedy.

██ We address first the issue of preemption. In connection with the filing of an involuntary petition for bankruptcy, section 303(i) of the Bankruptcy Code provides:

> "If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
> (1) against the petitioner and in favor of the debtor for—
>> (A) costs; or
>> (B) a reasonable attorney's fee; or
>
> (2) against any petitioner that filed the petition in bad faith, for—
>> (A) any damages proximately caused by such filing; or
>> (B) punitive damages." 11 U.S.C. §303(i) (1988).

It is clear then that since section 303(i) awards damages to the debtor, and that Better Care was the alleged debtor in the bankruptcy proceeding (*Better Care*, 97 Bankr. at 406), only that corporation and not Sarno would be subject to the preemptive effect of section 303(i). As previously noted, in declining to condition an award of damages under section 303(i) upon Better Care's delivering a general release to the petitioning creditors, the bankruptcy judge stated, "Better Care may have numerous other state or federal causes of action against the petitioning creditors, none of which would be preempted or discharged by this judgment" (*Better Care*, 97 Bankr. at 415); but the judge "expresse[d] no opinion regarding the existence or merits of any additional claims of Sarno or Better Care or as to the application of the principle of *res judicata* or collateral estoppel to any such claim or claims." (*Better Care,* 97 Bankr. at 416.) In support of this latter statement, the judge cited *Paradise Hotel Corp. v. Bank of Nova Scotia* (3d Cir. 1988), 842 F.2d 47, for the proposition that a "debtor aggrieved by [an] involuntary petition may pursue remedies outside bankruptcy court." *Better Care*, 97 Bankr. at 416 n.5.

In *Paradise Hotel*, the bank filed an involuntary chapter 7 petition for bankruptcy against the hotel, and the hotel responded by filing a voluntary petition under chapter 11. (*Paradise Hotel*, 842 F.2d at 48.) The hotel requested and was granted a stay of the involuntary chapter 7 petition in order to preserve its potential claims for damages caused by the wrongful filing of the petition until they could be determined with more certainty. After the completion of the chapter 11 proceeding, the hotel brought an action in district court for malicious prosecution, abuse of process, racketeering, false representation, intentional interference with business relationships and breach of trust against the bank for its bad-faith filing of the involuntary petition. The bank moved to dismiss for failure to state a claim. The district court granted the motion, which it treated as a request for summary judgment, in favor of the bank, concluding that the bank was entitled to participate in the chapter 7 filing, despite its fully secured status, and that the hotel's chapter 11 petition constituted an admission that it was generally unable to pay its debts as they became due. The court also held that the hotel waived its right to object to any defect in the filing of the involuntary petition by failing to contest its validity. (*Paradise Hotel*, 842 F.2d at 48-49.) With respect to the issue of waiver, the bank argued on appeal that the chapter 7 proceeding should be given *res judicata* effect, and that the remedy provided by section 303(i)(2) was exclusive. (*Paradise Hotel*, 842 F.2d at 51.) The court of appeals reversed.

As to the issue of waiver, the court found that the hotel responded to the involuntary petition, specified defects in the petition and requested a stay. The court also found that there was no adverse adjudication barring the hotel from asserting that the petition was defective. Accordingly, the court found that the hotel did not waive its claims. The court also noted that the absence of an adverse adjudication was fatal to the bank's contention that the chapter 7 proceeding should be given *res judicata* effect. (*Paradise Hotel*, 842 F.2d at 51-52.) As to the exclusive remedy issue, the court stated that although section 303(i)(2) was intended to permit a bankruptcy court to adjudicate claims in a chapter 7 proceeding like those asserted by the hotel, it does not require that all such claims be so adjudicated. Moreover, the court believed "it would be inconsistent with the overall scheme of the Code to find that §303(i)(2) is an exclusive remedy for such claims." (*Paradise Hotel*, 842 F.2d at 52.) The court reasoned that a debtor should not be forced to forego its right to convert a chapter 7 proceeding to a chapter 11 proceeding in order to pursue his or her bad-faith claims. (*Paradise Hotel*, 842 F.2d at 52.) "Accordingly, [the

court] decline[d] to hold that §303(i)(2) [was] an exclusive remedy in a situation of this kind." (*Paradise Hotel*, 842 F.2d at 52.) Because the court concluded that the hotel was free to contend that it was generally paying its debts as they became due and that the bank maliciously represented to the contrary, it remanded the case for further proceedings on the hotel's claims for malicious prosecution, abuse of process, false representation and intentional interference with business relationships. *Paradise Hotel*, 842 F.2d at 53.

In contrast, Collier's treatise on bankruptcy suggests that section 303(i) may be an exclusive remedy. Collier reports that the court in *Paradise Hotel* "decided, without citation to authority, that section 303(i) of the Code is not an exclusive remedy for an aggrieved debtor seeking damages from a petitioner who filed in bad faith." However, Collier's continues, "[t]he damages allowable under section 303(i) will include all damages proximately caused by the filing. The damage claim may include the torts of malicious prosecution or defamation and all business losses. *** Petitioning creditors who are liable for damages may request that the judgment for damages include a provision for obtaining a general release from the debtor. This should avoid a subsequent claim by the debtor for additional damages, or the assertion of a separate cause of action in a state court proceeding, if such a claim exists with the remedy now available under section 303(i)." 2 L. King, Collier on Bankruptcy §303.39 (15th ed. 1992).

In addition, as defendants point out, two California State court cases have held that section 303(i) is an exclusive remedy. (*Gene R. Smith Corp. v. Terry's Tractor, Inc.* (1989), 209 Cal. App. 3d 951, 257 Cal. Rptr. 598, *cert. denied* (1990), 494 U.S. 1016, 108 L. Ed. 2d 493, 110 S. Ct. 1318; *Idell v. Goodman* (Cal. Ct. App. 1990), 224 Cal. App. 3d 262, 273 Cal. Rptr. 605.) In *Gene R. Smith Corp.*, Terry's Tractor petitioned that Smith be adjudged an involuntary bankrupt. Smith successfully moved to dismiss the petition and then filed an action for malicious prosecution and abuse of process in State court against Terry's Tractor. The court dismissed the complaint on the grounds that it was preempted by Federal law and that the State court had no subject matter jurisdiction over those claims. The court relied on *dicta* in *Gonzales v. Parks* (9th Cir. 1987), 830 F.2d 1033, in reaching its decision, and found the following policy reasons outlined there to be persuasive.

> " 'Congress' authorization of certain sanctions for the filing of frivolous bankruptcy petitions should be read as an implicit rejection of other penalties, including the kind of substantial damage awards that might be available in state court tort suits.

Even the mere possibility of being sued in tort in state court could in some instances deter persons from exercising their rights in bankruptcy. In any event it is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized.' " (Emphasis omitted.) *Gene R. Smith Corp.*, 209 Cal. App. 3d at 954, 257 Cal. Rptr. at 599-600, quoting *Gonzales*, 830 F.2d at 1035-36.

■ We find particularly appealing the court's further statement that section 303(i) "reflects Congress' intent that the case by case development of the law relating to 'bad faith' in this context should be accomplished in federal courts and not in state courts," and that it would be "inconsistent with this legislative intent, for state courts to develop a different, more liberal definition of 'bad faith' for malicious prosecution purposes than that developed in the federal system. Different standards defining identical conduct adds an unnecessary and confusing component to the uniform law to be applied in bankruptcy proceedings." (209 Cal. App. 3d at 954-55, 257 Cal. Rptr. at 600.) The court also found that limiting Smith to a remedy under section 303(i) did not deprive him of his right to a jury trial. (*Gene R. Smith Corp.*, 209 Cal. App. 3d at 955-56, 257 Cal. Rptr. at 600-01.) We find the reasoning expressed in the California cases exceedingly convincing. (See also *In re Reid* (7th Cir. 1988), 854 F.2d 156, 162 (in which the court held that a common law claim for attorney fees based on the wrongful appointment of an interim trustee was preempted by section 303(i)).) Therefore, we decline to follow *Paradise Hotel* and hold that Better Care's State law conspiracy claim against EMP, Thermen and Beller is preempted by the exclusive remedy provided to it as a debtor under section 303(i) of the Bankruptcy Code.

■ As previously noted, only the State law claim of Better Care, the debtor, and not Sarno, is preempted by section 303(i). We must now examine whether Sarno's State law claim for conspiracy is barred by the doctrines of *res judicata*, collateral estopppel or election of remedies. "The doctrine of *res judicata* provides that 'a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the *same* claim, demand or cause of action.' (Emphasis added.) [Citation.] When *res judicata* is established 'as a bar against the prosecution of a second action between the same parties upon the same claim or demand *** it is conclusive not only as to every matter which was

offered to sustain or defeat the claim or demand, but as to any other matter which might have been offered for that purpose. [Citations.]' [Citation.]" (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 251-52.) Here, the circuit court declined to apply the doctrine of *res judicata* "because the Bankruptcy Court may not have been a competent Court to hear all manner of causes of action or claims for damages herein."

■ At this juncture a review of jurisdiction over bankruptcy matters would be helpful. In response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* (1982), 458 U.S. 50, 73 L. Ed. 2d 598, 102 S. Ct. 2858, which held that the Bankruptcy Reform Act of 1978 unconstitutionally conferred Article III judicial power on non-Article III judges, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984. As a result, jurisdiction over bankruptcy matters is vested in the Federal district courts. Section 1334(a) of the Judicial Code provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11." (28 U.S.C. §1334(a) (1988).) Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." (28 U.S.C. §1334(b) (1988).) Section 1334(c)(1) permits a district court to abstain "in the interest of comity with State courts or respect for State law *** from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." (28 U.S.C. §1334(c)(1) (1988).) Section 1334(c)(2) mandates that the district court abstain "[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, *** if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. §1334(c)(2) (1988).

Pursuant to section 157 of the Judicial Code, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district[ ]" (28 U.S.C. §157(a) (1988)), who function as a unit of the district court (28 U.S.C. §151 (1988)). "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject

to review under section 158 of this title." (28 U.S.C. §157(b)(1) (1988).) However, although "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11[,] [i]n such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge." (28 U.S.C. §157(c)(1) (1988).) This is true "whether or not an appeal has been taken by the parties." *In re K. & L. Limited* (7th Cir. 1984), 741 F.2d 1023, 1028.

■ Accordingly, previously unasserted claims can be barred by *res judicata* only if they would have been core proceedings in bankruptcy court. (*Barnett v. Stern* (7th Cir. 1990), 909 F.2d 973, 979, citing *Howell Hydrocarbons, Inc. v. Adams* (5th Cir. 1990), 897 F.2d 183, 189-90. Contra *Sanders Confectionery Products Inc. v. Heller Financial, Inc.* (6th Cir. August 17, 1992), No. 90−2039/2040; *Sure-Snap Corp. v. State Street Bank & Trust Co.* (2d Cir. 1991), 948 F.2d 869.) Core proceedings generally concern the administration and liquidation of the bankrupt's estate (28 U.S.C. §§157(2)(A) through (2)(O) (1988)) and "include most matters which are integral to the adjudication of bankruptcy or were traditionally before the bankruptcy court." (*In re Watson-Mahaney, Inc.* (N.D. Ill. 1987), 70 Bankr. 578, 581.) A proceeding is considered a core proceeding if it invokes a substantive right provided by title 11 or if it could arise only in the context of a bankruptcy case. (*Barnett*, 909 F.2d at 981, citing *In re Wood* (5th Cir. 1987), 825 F.2d 90, 97.) In addition, a core proceeding must involve a decision that ultimately affects the distribution of the debtor's assets. (*Howell*, 897 F.2d at 190.) Although "the mere fact that [a] claim raises issues of state law does not preclude a holding that the adversary proceeding is core[ ]" (*In re Manville Forest Products Corp.* (2d Cir. 1990), 896 F.2d 1384, 1389), "core proceedings exclude claims that are essentially state common law actions. * * * Non-core 'related' proceedings, on the other hand, are those matters that are traditional state law actions, not made subject to a federal rule of decision, but that are related, though only peripherally, to a pending bankruptcy case." (*In re Hudson Oil Co.* (D. Kan. 1986), 68 Bankr. 735, 739.) "Related matters are those non-core proceedings 'that, in the absence of bankruptcy, could have been brought in a district court or state court.' " (*Hudson*, 68 Bankr. at 741, quoting *In re Colorado Energy Supply* (10th Cir. 1984), 728 F.2d 1283, 1286; *Interconnect Telephone Services, Inc. v. Farren* (S.D.N.Y. 1986), 59 Bankr. 397, 400.) "Moreover, the proceeding must be such that 'the outcome of that proceeding could conceivably have [an] effect on the estate being adminis-

tered in bankruptcy." *Hudson*, 68 Bankr. at 741, quoting *Pacor, Inc. v. Higgins* (3d Cir. 1984), 743 F.2d 984, 994.

■ In this case, it is clear that Sarno's State law conspiracy claim, although based in part on the wrongful filing, would not have been a core proceeding in bankruptcy. Therefore, we hold that Sarno's State law conspiracy claim is not barred by *res judicata*.

■ "The doctrine of collateral estoppel applies when a party or someone in privity with a party participates in two separate and consecutive cases arising on *different* causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction. [Citation.] The adjudication of the fact or question 'in the first cause will, if properly presented, be conclusive of the same question in the later suit' [citation], but 'the judgment in the first suit operates as an estoppel only as to the point or question *actually litigated and determined* and not as to other matters which might have been determined.' (Emphasis added). [Citations.]" (*Housing Authority*, 101 Ill. 2d at 252.) "This doctrine may be invoked if (1) the issue decided in the prior adjudication is identical with the one presented in the current suit; (2) the prior suit was terminated with a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior suit. [Citations.]" *In re Nau* (1991), 209 Ill. App. 3d 805, 811.

In *Kennedy v. First National Bank* (1985), 129 Ill. App. 3d 633, 638, the court held that collateral estoppel did not bar the issue of whether the president and majority shareholder of a corporation was injured in his other business affairs and individually in his capacity as guarantor of the corporation's indebtedness "because (1) such issue was not actually or necessarily decided in the bankruptcy proceeding, and (2) the Bankruptcy Court expressly determined that it had no jurisdiction over such issue." Similarly, in *Telegraph Savings & Loan Association v. Schilling* (1984), 105 Ill. 2d 166, *cert. denied* (1986), 474 U.S. 1069, 88 L. Ed. 2d 801, 106 S. Ct. 829, the court determined that collateral estoppel did not preclude the resolution of a State law claim where the Federal district and appellate courts recognized that the State law claims were distinct and declined to address them. See also *Sweeney v. Citicorp Person-to-Person Financial Center, Inc.* (1987), 157 Ill. App. 3d 47, 51, *appeal denied* (1987), 116 Ill. 2d 576 (in which plaintiff was allowed to bring State law usury claims in State court after the bankruptcy court had ruled for the plaintiff on the plaintiff's motion requesting that it abstain from exercising its jurisdiction over those claims). But see *Union Federal Savings &*

*Loan Association,* 199 Ill. App. 3d at 1040; *Payne v. Country Mutual Insurance Co.* (1990), 195 Ill. App. 3d 995; *Johnson v. Nationwide Business Forms, Inc.* (1981), 103 Ill. App. 3d 631.

■ As previously noted, the bankruptcy court awarded damages resulting from the filing of the involuntary petition only to Better Care, and although the court also awarded it damages for the value of Sarno's time of which Better Care was deprived while she was defending the involuntary petition (*Better Care,* 97 Bankr. at 414), the issue of Sarno's *individual* damages was not actually or necessarily litigated in bankruptcy court. Therefore, Sarno's State law claim for conspiracy is not barred by collateral estoppel.

However, Sarno is not entitled to all the relief she is seeking. In their amended complaint plaintiffs prayed for judgment against each defendant as follows:

"a. That the defendants be required to account for all funds received by Akkeron and BOL from therapy services on their own behalf after the date Better Care was established;

b. That a constructive trust be imposed on all funds received by Akkeron and BOL from rendering therapy services on their own behalf after the date Better Care was established;

c. That Better Care be awarded damages for its lost business;

d. That Sarno be awarded damages for her salary and perquisites, and for the value of her Better Care shares;

e. That punitive damages be awarded in favor of Sarno and Better Care;

f. That the court grant any further relief that is just."

A "stockholder of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the stockholder because of an injury to the corporation." (*Twohy v. First National Bank* (7th Cir. 1985), 758 F.2d 1185, 1194, citing *Poliquin v. Sapp* (1979), 72 Ill. App. 3d 477, 480.) In *Kennedy,* the court held that where all of the alleged wrongful acts of the bank were directed at the corporation, which in turn caused damage to the shareholder in his individual capacity, the injury to the shareholder was derivative of the injury to the corporation. (*Kennedy,* 129 Ill. App. 3d at 637.) Here, the conspiracy is alleged to have injured the corporation and Sarno's interests therein. Any injury to Sarno in her capacity as a shareholder is derivative of the injury to the corporation. (*Kennedy,* 129 Ill. App. 3d at 637, citing *Stein v. United Artists Corp.* (9th Cir. 1982), 691 F.2d 885.) However, shareholders "injured by virtue of the diminution in value of their shares may not recover directly

for their losses, but are compensated indirectly if the corporation recovers because its assets are replenished." (*Kennedy,* 129 Ill. App. 3d at 637, citing *Stein,* 691 F.2d 885.) Therefore, Sarno may not recover for the lost value of her stock.

However, Sarno is also claiming damages based on her lost salary and perquisites.

"Where there is no showing that plaintiff himself had been injured in any capacity other than in common with his fellow stockholders, the cause of action belongs to the corporation [citation], and a stockholder may not seek relief on his own behalf. However, this general principle has no application where the wrongful acts are not only against the corporation but are also violations of a duty arising from a contract or otherwise, and owed directly by the wrongdoer to the stockholders. [Citation.] A suit brought by a stockholder upon a personal claim is by its nature distinguishable from a proceeding to recover damages or other relief for the corporation. [Citation.] Not every allegation of wrongdoing is a Simon-pure charge of individual injury, but a court must preliminarily determine if the 'gravamen' of the pleadings states injury to the plaintiff upon an individual claim as distinguished from an injury which indirectly affects the shareholders or affects them as a whole. [Citation.]" *Zokoych v. Spalding* (1976), 36 Ill. App. 3d 654, 663.

Therefore, if Sarno is successful in proving her charge of conspiracy, she would be entitled to recover only those *personal* damages that she might be able to prove. In addition, we note that "[i]f a civil conspiracy is found to exist, punitive damages may be had in an appropriate case under the normal standards pertaining to the imposition of punitive damages." M. Polelle & B. Ottley, Illinois Tort Law 390 (1985).

■ "The doctrine of election of remedies provides that the adoption of one or more coexisting remedies precludes a resort to the other remedies." (*Builders Plumbing Supply Co. v. Zambetta* (1986), 143 Ill. App. 3d 188, 190.) The doctrine applies "where (1) double compensation is threatened, (2) defendant has been misled by plaintiff's conduct and has changed his position in reliance upon it, or (3) the doctrine of *res judicata* can be applied. [Citations.]" (*Zambetta,* 143 Ill. App. 3d at 191.) In addition, contrary to the court's pronouncement in *Zambetta,* the remedies sought by the plaintiff must be inconsistent. (*Streams Condominium No. 3 Association v. Bosgraf* (1991), 219 Ill. App. 3d 1010, 1015, citing *Harris v. Manor Health-*

current remedies that are not inconsistent with each other ***.' " (*Harris*, 111 Ill. 2d at 366, quoting *Jackson v. Industrial Board* (1917), 280 Ill. 526, 531.) Here, given the limitations we have imposed on recoverable damages, double compensation is not threatened. In addition, there is no evidence of detrimental reliance. Finally, as we have noted above, *res judicata* does not apply. Therefore, the doctrine of election of remedies does not prevent Sarno from recovery.

For the above-stated reasons, we affirm the circuit court's dismissal of the State law conspiracy claim as it applies to Better Care, the debtor, but we do so on the ground that section 303(i) is the exclusive remedy for a debtor aggrieved by the bad-faith filing of an involuntary petition in bankruptcy. We reverse the circuit court's dismissal on the basis of collateral estoppel of the State law conspiracy claim as it applies to Sarno, since the issue of her damages was not actually or necessarily litigated by the bankruptcy court, and we remand for further proceedings consistent with the views expressed herein.

Affirmed in part; reversed in part, and remanded.

DiVITO and McCORMICK, JJ., concur.