661 So.2d 855 (1995)
R.L. LaROCHE, INC., a Florida Corporation; and Ronald L. LaRoche, Appellants,
v.
BARNETT BANK OF SOUTH FLORIDA, N.A.; Robert J. Grimmig, Jr.; Michael Sears; David L. Peterson; Ned R. Nashban; and Nancy Berz Colman, Appellees.
No. 94-0212.
District Court of Appeal of Florida, Fourth District.
September 20, 1995.
Rehearing, Rehearing, and Certification of Question Denied November 9, 1995.
*856 Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens and Robert E. Geisler of Peterson, Bernard, Vandenberg, Fei & Martin, West Palm Beach, for appellants.
Nancy W. Gregoire and Mary F. April of Ruden, Barnett, McCloskey, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellees Barnett Bank of South Florida, N.A., Grimmig and Sears.
Alvin B. Davis, Lazaro Fernandez, Jr., and Eduardo I. Sanchez of Steel Hector & Davis, Miami, for appellees Peterson, Nashban and Colman.
Rehearing, Rehearing En Banc, and Certification of Question Denied November 9, 1995.
*857 FARMER, Judge.
The controversy at the heart of this appeal is whether a circuit court in Florida has subject matter jurisdiction over a debtor's common law abuse of process and malicious prosecution claims against his creditor for filing in bad faith an involuntary petition for relief under section 303 of the Bankruptcy Code. Viewed from the opposite end of the tunnel, the question is whether the United States Bankruptcy Court has exclusive jurisdiction of such claims, thereby ousting our circuit court. We hold that our circuit court does have jurisdiction and reverse the dismissal of the claim.
In broad brush, the facts are as follows.[1] Barnett Bank (creditor) had for many years made a line-of-credit loan to LaRoche (debtor), a general contractor in the construction industry. The debtor drew on the credit from time to time to bridge the gap between full performance and final payment of a contract. Debtor became a general contractor on a project as to which creditor was the construction lender. During the course of construction, the owner made many change orders, causing the project to exceed the construction loan budget. Creditor induced debtor to forego declaring a default from the owner's failure to pay draws as they became due, but the lack of payment forced debtor to draw on its line of credit when it would otherwise not have had to do so. Debtor and the owner were required to resolve their dispute through arbitration. Creditor refused to grant debtor an extension for payment on the line of credit loan account until the arbitration award became final.
During the course of negotiations to settle the dispute, creditor filed an involuntary petition in the United States Bankruptcy Court for the Southern District of Florida against debtor. See 11 U.S.C. § 303(a). After creditor itself moved to voluntarily dismiss the bankruptcy petition, the bankruptcy court dismissed the title 11 case but reserved jurisdiction to assess costs, fees and punitive damages under section 303(i)(2) of the Bankruptcy Code for bad faith filing.[2]
Debtor later filed a multicount complaint in the circuit court in Broward County suing creditor and several individuals for abuse of process, malicious prosecution and slander arising from the filing of the bankruptcy petition. All defendants moved to dismiss the action on the grounds that the Bankruptcy Court has exclusive jurisdiction over such claims. The circuit judge agreed with the defendants and dismissed the action. Hence the present appeal.
We begin by noting that no United States Supreme Court precedent directly decides the issue we confront. Nor are there any authorities in the United States Courts of Appeals. Actually only two of the circuits have even come close to the issue, and their decisions, though not directly on point, appear to suggest differing views. See Gonzales v. Parks, 830 F.2d 1033 (9th Cir.1987); and Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47 (3rd Cir.1988).
In Gonzales, the debtors filed a petition under chapter 11 of the Bankruptcy Code just before a foreclosure sale was about to be held on their house. While the bankruptcy case was pending, the foreclosing mortgagee filed an action in the state court against the debtors claiming that the bankruptcy filing was an abuse of process. The debtors failed to answer the state court pleading, and a default judgment was entered against them. *858 Instead, the debtors filed an action in the bankruptcy court seeking relief from the state court judgment. The bankruptcy court entered a summary judgment against the mortgagee for violating the automatic stay provision of section 362 of the Bankruptcy Code, declaring the state court judgment void. The bankruptcy court then vacated that judgment but awarded attorney's fees to the debtors. On appeal, the mortgagee argued that the automatic stay did not apply to its abuse of process claim arising from the debtors' voluntary filing because the claim arose after the filing and not before it.
The Ninth Circuit rejected that argument, holding that the bankruptcy court had exclusive jurisdiction over the matter. Although the court could have held that the state court action was a violation of the automatic stay, it specifically rejected that conclusion. Instead it reasoned as follows:
"Implicit in the [mortgagee's] appeal is the notion that state courts have subject matter jurisdiction to hear a claim that the filing of a bankruptcy petition constitutes an abuse of process. We disagree with that assumption. Filings of bankruptcy petitions are a matter of exclusive federal jurisdiction. State courts are not authorized to determine whether a person's claim for relief under a federal law, in a federal court, and within that court's exclusive jurisdiction, is an appropriate one. Such an exercise of authority would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards as to when persons may properly seek relief in cases Congress has specifically precluded those courts from adjudicating."
830 F.2d at 1035. Although not expressly stated by the Ninth Circuit, an important part of its conclusion was undoubtedly that it was the debtors themselves who sought relief in the bankruptcy court, as they were entitled to do, rather than being dragged there by a petitioning creditor. While its opinion is not explicitly limited to abuse of process claims brought by creditors against the debtor while his voluntary bankruptcy case was still pending, it is difficult to read the holding beyond that factual circumstance. Here, of course, it is the creditor who filed an involuntary petition against a debtor who had no intention of exercising any right to petition for relief under the bankruptcy laws.
In contrast Paradise Hotel actually involves an involuntary filing by a petitioning creditor and the debtor's later claims against that creditor predicated on the contention that the involuntary petition was in bad faith. The similarity to the present case, however, does not go beyond that bare circumstance. The bank holding the mortgage on the debtor's hotel filed an involuntary petition against the debtor, seeking a liquidation under chapter 7. In response, the debtor moved to stay the involuntary proceeding while it petitioned for itself to reorganize under chapter 11. The debtor contended that the bank's filing of an involuntary petition was improper, however, because it was then paying its obligations as they became due but that the bank's filing had the effect of causing it to become insolvent and unable to pay creditors. The bankruptcy court granted the stay, and over the next two years the debtor successfully worked out a reorganization plan that paid off all of its creditors. When that was done, the debtor then filed an action in the federal district court seeking damages from the bank for the bad faith filing.
On appeal after the district court dismissed the action, the Third Circuit concluded that the debtor had stated a claim on which relief could be granted. The court expressly upheld as valid claims based on malicious prosecution, abuse of process, false representation, and intentional interference with business relationships. It upheld the dismissal of an attempted RICO claim, however, and another for breach of trust. There is no discussion of any jurisdictional issue; nor can we ferret out from the discussion whether any question of jurisdiction was even raised. In allowing the claims at all after the completion of the bankruptcy case, however, there is an implied rejection of the notion that such claims would be left solely to the bankruptcy court.
It should be said, therefore, that neither Circuit Court of Appeals decision is directly on point. One bankruptcy court has directly *859 confronted the issue. In the Matter of Emerald City Records Inc., 9 B.R. 319 (Bankr. N.D.Ga. 1981), held on indistinguishable pleading facts that the bankruptcy court had original, but not exclusive, jurisdiction to consider the claim; but the court abstained and remanded the case to state court for a determination. Of equal significance is its holding that the state courts have concurrent jurisdiction over such claims, which are not barred by bankruptcy law, as the Ninth Circuit suggested. Emerald City, however, predates Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and 1984 amendments to the jurisdictional provisions of the new Bankruptcy Code, about which more in a moment. There being no clear authority in the federal courts directly on point, therefore, we must necessarily decide this case  as we did in Wylie v. Investment Management & Research Inc., 629 So.2d 898 (Fla. 4th DCA 1993)  in the same way we believe the United States Supreme Court would do so.
The circuit court in Florida is a court of general jurisdiction. Although it shares some subject matter with the county court, it is the primary trial court in our state judicial system. In contrast, "[t]he jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in and limited by statute." Celotex Corp. v. Edwards, ___ U.S. ___, ___, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995). The issue presented here thus centers on whether a state court of general jurisdiction is ousted from considering a cause of action arising under its own laws by a federal court of limited jurisdiction.
As Holmes once observed, a page of history is worth a volume of logic. Under the Bankruptcy Act of 1898, bankruptcy cases were administered by a referee, not a judge in an article III court. The jurisdiction of the tribunal presided over by the referee depended on two sources: namely summary jurisdiction over the assets in the actual possession of the bankrupt, and consent of the parties as to property claimed to belong to the bankrupt but in possession of third parties. Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); Northern Pipeline, 458 U.S. at 53, 102 S.Ct. at 2862. When the third party did not consent to bankruptcy court jurisdiction, the trustee was required to bring a "plenary suit" in a court of competent jurisdiction, usually a state court, to recover the property. Id.
Congress repealed the old Bankruptcy Act of 1898 and enacted the Bankruptcy Reform Act of 1978, Pub.L. 95-598, creating a new Bankruptcy Code. 11 U.S.C. § 101 et seq. It originally gave the new bankruptcy courts jurisdiction over any case arising under or related to the Bankruptcy Code. Because, however, the bankruptcy judges lacked article III qualifications,[3] in Northern Pipeline the Supreme Court invalidated some of the jurisdictional provisions. 458 U.S. at 71-87, 102 S.Ct. at 2871-2880. The essential holding to which the 4-Justice plurality and the 2-Justice concurrence subscribed was that so much of the 1978 Reform Act as allowed Northern Pipeline's suit to be determined over the objection of Marathon Pipe Line, by a bankruptcy judge who lacked the essential article III requirements of life tenure and protection of compensation, was unconstitutional. 458 U.S. at 91-92, 102 S.Ct. at 2882.
Congress then amended the bankruptcy jurisdictional provisions in 1984 and enacted the present scheme. See Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98-353, July 10, 1984. The 1984 Act amended 28 U.S.C. § 1334 to read in pertinent part as follows:
"(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
"(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil *860 proceedings arising under title 11, or arising in or related to cases under title 11."
At the same time, Congress also enacted a new provision creating 28 U.S.C. § 157, which contains in part the following:
"(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
"(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."
Hence, the United States District Court has exclusive jurisdiction over a title 11 case, i.e. a bankruptcy case, which it can  as it were  cede to a bankruptcy judge who serves as an adjunct of the district court. If the district court elects to do so, as the District Court for the Southern District of Florida has done, then the bankruptcy judge has exclusive jurisdiction over "core proceedings" and merely original jurisdiction over "related-to" proceedings.[4]
As to non-core proceedings, Congress provided:
"(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
"(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title."
Thus, claims or causes of action that merely arise under title 11, or that arise in or are related to a case under title 11, are within the district court's original but nonexclusive jurisdiction.
Plainly debtor's claims here do not constitute a case under title 11, as to which the federal court's jurisdiction is exclusive, for that case has been dismissed by the bankruptcy judge. Nor could we say that debtor's claims arise under or in title 11, for they find their source not in federal law, bankruptcy or otherwise, but under the common law of the State of Florida. At best, these claims might be said to relate to a case *861 under title 11, but in no sense can they be said to constitute a case under, or a case arising in or under, title 11. The question directly raised here is whether either the district court and the bankruptcy court validly have any jurisdiction, after the dismissal of the bankruptcy case, to hear and determine a debtor's state law abuse of process and malicious prosecution action against a petitioning creditor for damages relating to the bad faith filing of a petition under § 303 of the Bankruptcy Code.
The Supreme Court has very recently addressed the issue of the extent of related-to jurisdiction for non-core proceedings. In Celotex Corp. v. Edwards, ___ U.S. ___, ___, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995), the bankruptcy court enjoined a judgment creditor from proceeding against a supersedeas bond. The creditor had recovered a judgment against the debtor in the federal district court in Texas. Some 15 months before filing for relief under the bankruptcy laws, the debtor appealed the judgment and furnished a supersedeas bond through a surety (thus staying execution on the judgment). The judgment was affirmed by the Fifth Circuit.
After the bankruptcy petition was filed, the debtor moved to enjoin creditors of the estate from asserting claims against sureties issuing supersedeas bonds on behalf of the debtor, like the one in question, and the bankruptcy court in Florida granted the motion and issued the injunction. Without challenging the injunction, the judgment creditor returned to the district court in Texas and moved for permission to execute against the bond, which the district court granted. That decision was affirmed by the Fifth Circuit over the debtor's contentions that it constituted a collateral attack on the injunction issued by the bankruptcy court in Florida.
On review in the Supreme Court, the judgment creditor argued that the bankruptcy court had no jurisdiction to issue the injunction under section 105 of the Bankruptcy Code, and therefore the injunction was void. In that regard, the creditor contended that the bankruptcy court would have had jurisdiction to issue the injunction only if the bond proceeding in the district court in Texas was "related to" the bankruptcy case in Florida. Hence the Court was directly confronted with the necessity to construe the "related-to" provisions of sections 157(a) and 1334(b).
The Court began by observing that, although Congress did not define the scope of related-to jurisdiction, the "choice of words suggests a grant of some breadth." ___ U.S. at ___, 115 S.Ct. at 1498. Continuing, the Court said:
"The jurisdictional grant in § 1334(b) was a distinct departure from the jurisdiction conferred under previous acts, which had been limited to either possession of property by the debtor or consent as a basis for jurisdiction. See S.Rep. No. 95-989, 2d Sess., pp. 153, 154 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5939, 5940. We agree with the views expressed by the Court of Appeals for the Third Circuit in Pacor, Inc. v. Higgins, 743 F.2d 984 (1984), that `Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate,' id., at 994; see also H.Rep. No. 95-595, pp. 43-48 (1977), and that the `related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate. We also agree with that Court's observation that a bankruptcy court's `related to' jurisdiction cannot be limitless. See Pacor, supra, at 994; cf. Board of Governors v. MCorp Financial, 502 U.S. 32, 40, 112 S.Ct. 459, 464, 116 L.Ed.2d 358 (1991) (stating that Congress has vested `limited authority' in bankruptcy courts)."
___ U.S. at ___-___, 115 S.Ct. at 1498-99. In a footnote to the last quoted sentence before the citation, the Court discussed some of the tests used by the federal courts to determine the existence of "related-to" jurisdiction. Nine of the circuits have adopted a test that centers around whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy" and holds that an action *862 is related to the bankruptcy case "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action * * * and which in any way impacts upon the handling and administration of the bankrupt estate." Pacor Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir.1984). Two other circuits "seem to have adopted a slightly different test." Celotex, ___ U.S. at ___ n. 6, 115 S.Ct. at 1499 n. 6. Finishing up the point, the Court said: "But whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." [e.s.] Id.
The Court then pointed to the fact that, in order to induce the insurance company to act as a surety, the debtor had been required to allow the company to retain the proceeds of certain settlements resolving coverage disputes between the debtor and the carrier. The bankruptcy court had found that the retained proceeds would be needed in order for the debtor to have any chance at a reorganization. Thus execution on the bond by the creditor would have a substantial effect on the bankruptcy estate. In the end, the Court held that the bond proceeding was "at least" related to the bankruptcy case.
The facts of our case unquestionably demonstrate that the bankruptcy court had dismissed the title 11 case after the petitioning creditor had moved to voluntarily dismiss the petition. There was thus no bankruptcy estate left for that court to administer; hence no case under title 11. Without an estate to administer, it is clear that there is no uniquely bankruptcy interest left. There is no possibility, e.g., that decisions in other courts might rob the bankruptcy judge's decisions of efficacy or interfere with the administration of the estate. In short, our state court action cannot possibly "have [any] effect on the debtor [e.s.]," qua bankruptcy debtor. ___ U.S. at ___ n. 6, Celotex, 115 S.Ct. at 1499 n. 6.
Still, the creditor in our case asserts that state court adjudication of such claims as we face would impair the right of access to the bankruptcy court. There is, of course, no possibility that it would discourage distressed debtors themselves from seeking relief under title 11, as was the circumstance in Gonzales. Whether creditors would be discouraged from asserting section 303 against insolvent debtors who are wasting, transferring or concealing assets is quite another matter. As we have already said, we cannot discern how Gonzales concluded that good faith petitioners would also be discouraged by state court adjudications of bad faith. There are no facts found by the lower court on that subject, so we assume that the appellate court relied on something that the judges intuited or felt they knew generally. Stated formulaically, Gonzales seems to posit that discouraging group X from filing involuntary petitions would end up discouraging group Y.
It is not immediately obvious to us how damage awards against creditors who have filed involuntary petitions in bad faith  which we take to mean dishonestly and without any pretense of a legal and factual basis for so doing  would deter creditors who have a good faith basis in law and fact to seek such relief. Concededly, such awards would dissuade bad faith creditors, but that seems a result that Congress itself intended. After all, section 303(i)(2) quite specifically allows the bankruptcy court to assess costs, fees and punitive damages against a creditor whom the court has found to have filed an involuntary petition in bad faith. It is thus indisputable that Congress contemplated, at least to that extent, to engage in some deterrence of bad faith involuntary filings.
All creditors who contemplate filing an involuntary petition under section 303, therefore, already face the prospect that a court may determine that they acted in bad faith. Gonzales did not explain why bankruptcy court adjudications of bad faith filings under section 303(i)(2) would not hinder good faith creditor access, but that state court adjudications would necessarily do so. Stated conversely, it is not immediately apparent how the prospect of state courts doing what the bankruptcy courts already can do might deter good faith filers. We are simply unable to discern a rationale for the dictum in Gonzales.
The other primary argument against state court adjudication of such claims is, according to our creditor, the mosaic of jurisprudence that might develop if each state were free to decide under its own laws what might constitute an abuse of process or malicious prosecution claim based on a bad faith *863 filing under section 303(a).[5] Presuming that mosaic to be a melancholy consequence, our creditor reasons that the grant in section 303(i)(2) to the bankruptcy court evinces a congressional purpose to have that tribunal alone assess bad faith damages.
But the mere fact that Congress might have decided to allow bankruptcy court monetary awards against creditors who file in bad faith does not necessarily produce the conclusion that Congress intended to give these claims exclusively to the bankruptcy courts. It is an important feature of statutory construction to avoid a construction that would result in invalidity. Congress itself might have doubted the constitutionality of an exclusive grant of such jurisdiction to this arguably article I tribunal.[6]
As we have previously noted, this claim is set up in the form of an ordinary cause of action for abuse of process or malicious prosecution under Florida state common law. There are several federal law civil claims  e.g., securities registration and fraud, antitrust, motor vehicle warranties, fair credit reporting, equal employment opportunity, to list just a few  on which a litigant could theoretically prevail in a suit in a federal court and then sue the federal law claimant in a state court for abuse of process or malicious prosecution. If the creditor here is on sound footing in its "mosaic" argument, it would apply equally well to these hypothetical claims, thus barring them as well from the state courts. The creditor's logic would thus represent a severe curtailment of state control over state law claims without, it seems to us, a significant and clear federal purpose. Thus, applying the rule of construction against invalidity, we conclude that Congress may have simply intended to make the tribunal's jurisdiction available to parties who consent to it but allow those who do not consent, as here, to resort to the courts of the several states.[7]
In any event, Congress may simply have believed that any resulting mosaic, an inevitable feature of our system under the Tenth Amendment, is not necessarily undesirable. After all, we are talking about creditors who have arguably abused the system. If the debtor is able to prove his claims, this creditor will have been shown to have dragged a debtor into the bankruptcy court without any pretense of supporting fact and law. It is unquestionably true that state laws primarily govern the debtor-creditor relationship and that state law furnishes the rule of decision on many questions in a bankruptcy court. It is not farfetched to assume that Congress intended that the several states be free to punish such creditors under their own laws in their own courts. And, in any event, there is a single overseer for this system in the United States Supreme Court, which can always narrow such causes of action to specific elements and proof if state decisions have the effect of interfering with the primacy of federal bankruptcy law.
The Supreme Court has long applied a rebuttable presumption that, when Congress is silent on whether federal court jurisdiction is exclusive, state courts have concurrent jurisdiction of claims arising under Federal law. See, e.g., Claflin v. Houseman, 93 U.S. (3 Otto) 130, 23 L.Ed. 833 (1876); Martinez v. *864 California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981). When the court has found exclusivity by implication, it has stressed the necessity for interpretive uniformity, the difficulty of the issues presented, and the prospect of state court hostility to the purposes of the federal statute under which a claim of right or duty has arisen. See, e.g., Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); and General Inv. Co. v. Lake Shore & M.S. Ry. Co., 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244 (1922); see also Paul M. Bator et al., HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 480 (3rd ed. 1988). Neither section 157(b) nor section 1334(b) say anything about the kind of claims we face today. Even assuming therefore that all claims for the bad faith filing of a section 303 involuntary petition constituted a federal question, a proposition about which we have considerable doubt, there is a rebuttable presumption against federal court exclusivity.
We have already considered any supposed need for interpretive uniformity and found it unlikely. The claims asserted do not appear to be difficult and are based on common law causes of action. To the extent that bad faith filing of an involuntary petition might be seen as a novel basis for an abuse of process or malicious prosecution claim, the decision in Emerald City seems to the contrary. We note that state courts outside Florida that have considered this issue have come to the opposite conclusion. See, e.g., Sarno v. Thermen, 239 Ill. App.3d 1034, 180 Ill.Dec. 889, 608 N.E.2d 11 (1992) (finding federal preemption and exclusivity); Edmonds v. Lawrence Nat'l Bank & Trust Co., N.A., 16 Kan. App. 2d 331, 823 P.2d 219 (1991) (same); Idell v. Goodman, 224 Cal. App.3d 262, 273 Cal. Rptr. 605 (1990) (same); and Gene R. Smith Corp. v. Terry's Tractor Inc., 209 Cal. App.3d 951, 257 Cal. Rptr. 598 (1989) (same), cert. denied, 494 U.S. 1016, 110 S.Ct. 1318, 108 L.Ed.2d 493 (1990). Notwithstanding these holdings, there is little to suggest that there is a realistic prospect of state court animosity to any bankruptcy liquidation or reorganization. Again, assertion of the claims we address today cannot possibly involve hostility to bankruptcy because there is no estate to administer under the circumstance we face today.
And so we are drawn to conclude that, because there is no express grant of exclusive jurisdiction for these claims to the bankruptcy court and no strong reason to suppose that Congress gave such power by implication, not to mention the cloud of unconstitutionality that such a construction might place on the 1984 amendments to the bankruptcy court provisions, the causes of action asserted here may be brought as ordinary common law actions in a competent state court.[8] If this reading of the bankruptcy jurisdictional statute is incorrect, we are comforted by the knowledge that the Supreme Court can tell us so, or Congress can make its wishes express. We therefore reverse the decision of the circuit court and remand for consistent proceedings.
REVERSED.
GUNTHER C.J., and STONE, J., concur.
NOTES
[1] As the action below was dismissed on a motion under rule 1.140(b), Florida Rules of Civil Procedure, we are required to assume that the facts alleged in the complaint are true. Hammonds v. Buckeye Cellulose Corp., 285 So.2d 7 (Fla. 1973). In this regard, the Florida principle is similar to Federal Rule of Civil Procedure 12(b)(6). We certainly make no determination that the Barnett Bank defendants are actually guilty of the conduct alleged.
[2] 11 U.S.C. § 303(i)(2) provides in pertinent part:

"(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment 
* * * * * *
(2) against any petitioner that filed the petition in bad faith, for 
(A) any damages proximately caused by such filing; or
(B) punitive damages."
[3] U.S. Const. art. III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.")
[4] 28 U.S.C. § 157(b)(2) provides:

(2) Core proceedings include, but are not limited to 
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
[5] A nonbankruptcy practitioner might look at the welter of decisions on any number of issues under the Bankruptcy Code in the 12 federal circuits, not all of them harmonious with each other, and wonder if the mosaic is not already a fact of life.
[6] Senator Hatch spoke vigorously against the adoption of the "related-to" jurisdiction provision during floor debate on the Conference Committee Report that produced what became the 1984 amendments. He contended that article III limits the jurisdiction of federal courts to federal question and diversity cases, and that bankruptcy court adjudication of purely state law claims without an independent source of federal court jurisdiction probably did not cure the defects found in Northern Pipeline. 130 Cong.Rec. S8891 (daily ed. June 29, 1984) (statement of Sen. Orrin G. Hatch), reprinted in 1984 U.S.C.C.A.N. 576.
[7] To those who protest that parties may not by their consent confer jurisdiction on a court otherwise lacking it, we again recall that party consent to bankruptcy tribunal jurisdiction has been a feature of the law going back to the Bankruptcy Act of 1898. See Northern Pipeline, 458 U.S. at 53, 102 S.Ct. at 2862. It seems rather apparent to us that the unwilling bankruptcy debtor might understandably decide, upon dismissal of the involuntary case, to refuse to allow bankruptcy court adjudication of any state cause of action he may have based on a bad faith filing. We thus attach no particular significance to the reservation of jurisdiction by the bankruptcy judge to consider a section 303(i)(2) claim by the debtor and the debtor's obvious disinclination to use it.
[8] Our decision today is strictly one of jurisdiction. We have not addressed any issue as to whether the pleading states a cause of action against any particular defendant. We leave the question of pleading requirements and necessary proof to the circuit court to assess in the first instance.