772 So.2d 30 (2000)
Jolie MULLIN, Appellant,
v.
James B. ORTHWEIN, Jr., and Percy J. Orthwein, Appellees.
No. 4D99-2888.
District Court of Appeal of Florida, Fourth District.
September 13, 2000.
Rehearing Denied December 14, 2000.
Susan B. Yoffee of Fleming, Haile & Shaw, P.A., North Palm Beach, for appellant.
Bard D. Rockenbach of Sellars, Marion & Bachi, P.A., West Palm Beach, for appellees.
PER CURIAM.
We reverse the summary judgment entered in favor of appellees on the authority of R.L. LaRoche, Inc. v. Barnett Bank of South Florida, 661 So.2d 855 (Fla. 4th DCA 1995). Based on this record and the rules pertaining to summary judgment, the bankruptcy court did not consider the issue of a bad faith filing or damages, punitive or otherwise, associated with that issue. See Londono v. Turkey Creek, Inc., 609 So.2d 14, 18 (Fla.1992); Faircloth v. Garam, 525 So.2d 474, 476 (Fla. 5th DCA 1988).
STONE and POLEN, JJ., concur.
GROSS, J., concurs specially with opinion.
*31 GROSS, J., concurring specially.
I concur with the majority based on existing precedent. However, I believe that R.L. LaRoche, Inc. v. Barnett Bank of South Florida, 661 So.2d 855 (Fla. 4th DCA 1995), was wrongly decided so that this court should recede from that decision en banc.
This appeal arises from a final summary judgment rendered in favor of James and Percy Orthwein on Jolie Mullin's claims of malicious prosecution and intentional infliction of emotional distress. Absent LaRoche, I would agree with the trial court that Mullin's claims were preempted by the Bankruptcy Code.
On March 13, 1998, Mullin filed her complaint in this case seeking damages for malicious prosecution and intentional infliction of emotional distress. Her complaint followed the bankruptcy court's dismissal of the Orthweins' involuntary petition for bankruptcy against her. Mullin's malicious prosecution count stated, in part:
8. That on March 12, 1996, Case No.: 96-30959-BKC-SHF, in the United States Bankruptcy Court for the Southern District of Florida was commenced by the filing of the involuntary petition by James B. Orthwein, Jr. and Percy J. Orthwein.
9. The prior proceeding was terminated in favor of the present Plaintiff by that certain Order on Petitioners' Motion for New Trial, Rehearing or Reconsideration of Order Dismissing Involuntary Petition and on Motion to Tax Fees and Costs dated March 7, 1997.... This Order was affirmed on appeal pursuant to a Judgment of Judge Daniel T.K. Hurley of the United States District Court for the Southern District of Florida entered on January 12, 1998.
10. That the Court's Order dated March 7, 1997 stated that "dismissal of the instant involuntary petition nevertheless is warranted on the basis that the involuntary petition has been commenced and prosecuted in bad faith and for an inappropriate purpose." There was an absence of probable cause for prosecution of the prior proceeding by James B. Orthwein, Jr. and Percy J. Orthwein.
11. The Defendants ... instituted the prior proceeding with legal and actual malice.
12. That as a result of Defendants' actions and actual malice, the Plaintiff Jolie Mullin is entitled to compensatory damages and to punitive damages upon the requisite showing under Chapter 768, Florida Statutes.
The Orthweins' motion for summary judgment, filed on June 16, 1999, asserted that the circuit court did not have jurisdiction due to preemption by "the U.S. Bankruptcy Court's exclusive jurisdiction over any claims arising out of the alleged improper filing of the involuntary bankruptcy petition." In opposition to the motion, the affidavit of James Telepman, Mullin's bankruptcy counsel, stated:
4. At no time did Plaintiff, in the Bankruptcy Court, request or plead for punitive damages or any other damages associated with the bad faith filing by the Orthweins of the involuntary petition for bankruptcy, other than for attorney's fees and costs.
A court should not grant a motion for summary judgment unless the moving party conclusively shows the absence of any genuine issue of material fact. See McDonald v. Florida Dep't of Transp., 655 So.2d 1164, 1167-68 (Fla. 4th DCA 1995). When reviewing a motion for summary judgment, the trial court must draw every possible inference in favor of the party against whom a summary judgment is sought. See Albelo v. Southern Bell, 682 So.2d 1126, 1129 (Fla. 4th DCA 1996). Summary judgment should not be granted "unless the facts are so crystallized that nothing remains but questions of law." *32 Sanzare v. Varesi, 681 So.2d 785, 786 (Fla. 4th DCA 1996) (citation omitted). This case presents a pure question of law.
The trial court based its final summary judgment on the finding that Mullin's "claims were available in the previous bankruptcy action pursuant to 11 U.S.C. § 303." Section 303(i) of Title 11 of the Bankruptcy Code provides:
If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment
(1) against the petitioners and in favor of the debtor for
(A) costs; or
(B) a reasonable attorney's fee; or
(2) against any petitioner that filed the petition in bad faith, for
(A) any damages proximately caused by such filing; or
(B) punitive damages.
The notes to section 303 provide that "`[o]r' is not exclusive in this paragraph. The court may grant any or all of the damages provided for under the provision." 11 U.S.C. § 303 (2000) (historical and statutory notes).
During the bankruptcy proceedings, Mullin sought a dismissal of the involuntary bankruptcy petition filed by the Orthweins, based in part on the Orthweins' failure to establish that she was not generally paying her debts as the debts became due. In the bankruptcy court, Mullin did not request or plead for punitive damages or any other damages associated with the bad faith filing by the Orthweins, other than for attorney's fees and costs. The Orthweins contend that since section 303(i) allows attorney's fees and costs as well as compensatory and punitive damages, Mullin's decision to seek only attorney's fees and costs in the bankruptcy court precludes her ability to seek punitive damages in state court.
In LaRoche, this court held that a Florida state circuit court has subject matter jurisdiction over a debtor's malicious prosecution claim against his or her creditor for a bad faith filing of an involuntary petition for bankruptcy. See 661 So.2d at 861. As LaRoche framed the issue:
The question directly raised here is whether either the district court and the bankruptcy court validly have any jurisdiction, after the dismissal of the bankruptcy case, to hear and determine a debtor's state law abuse of process and malicious prosecution action against a petitioning creditor for damages relating to the bad faith filing of a petition under § 303 of the Bankruptcy Code.
Id. (emphasis omitted).
After very extensive analysis, the LaRoche panel held that "because there is no express grant of exclusive jurisdiction for these claims to the bankruptcy court ... the causes of action asserted here may be brought as ordinary common law actions in a competent state court." Id. at 864 (footnote omitted). Under the decision in LaRoche, subsequent to the dismissal of an involuntary bankruptcy petition by the bankruptcy court, a debtor has the choice of pursuing in state court a malicious prosecution claim based on the creditor's bad faith filing of the petition or seeking relief in the federal forum under section 303 of the Bankruptcy code. See id. Thus, according to LaRoche, while Mullin could have sought punitive damages in the bankruptcy court, she was not required to do so; and once the bankruptcy court dismissed the involuntary petition, Mullin was free to pursue common law remedies in state court.
Significant to the decision in LaRoche was the recognition that "no clear authority [exists] in the federal courts directly on point." Id. at 859. Since we decided LaRoche, the judicial landscape in this area of law has considerably developed.
As recently recognized by the Superior Court of Pennsylvania in Shiner v. Moriarty, 706 A.2d 1228, 1238 (Pa.Super.Ct.1998), *33 the few cases now holding that the Bankruptcy Code permits state law remedies for abuse of its provisions, "stand in stark contrast to the preponderance of federal and state decisions." (Citing MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910 (9th Cir.1996); Gonzales v. Parks, 830 F.2d 1033 (9th Cir. 1987); Raymark Indus., Inc. v. Baron, No. 96-7625, 1997 WL 359333 (E.D.Pa. June 23, 1997); Koffman v. Osteoimplant Tech., Inc., 182 B.R. 115 (D.Md.1995); Mason v. Smith, 140 N.H. 696, 672 A.2d 705 (1996); Sarno v. Thermen, 239 Ill.App.3d 1034, 180 Ill.Dec. 889, 608 N.E.2d 11 (1992); Idell v. Goodman, 224 Cal.App.3d 262, 273 Cal.Rptr. 605 (1990)).
Shiner held that the plaintiffs' state tort claim for wrongful use of process arising from the filing of certain papers in the bankruptcy court was pre-empted by the remedies available under the Bankruptcy Code. See 706 A.2d at 1238. In reversing the lower court, and rejecting its reliance on LaRoche and Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47 (3d Cir.1988), Shiner held that "the Bankruptcy Code permits no state law remedies for abuse of its provisions" and the plaintiffs' claim "being based upon the defendants' conduct in the bankruptcy proceedings, is pre-empted by the Bankruptcy Code." Id. (citation omitted).
Having reviewed the law in this area, I believe it appropriate to recede from our opinion in LaRoche and adopt the ninth circuit's reasoning in MSR Exploration, 74 F.3d at 912. In that case, a debtor brought a tort action for malicious prosecution against a creditor in federal district court on the basis that the creditor maliciously pursued claims against the debtor in the underlying Chapter 11 bankruptcy proceeding. See id. The debtor did not pursue sanctions or any other remedy in the bankruptcy court. The Ninth Circuit Court of Appeals framed the issue before it as "whether state malicious prosecution actions for events taking place within the bankruptcy court proceedings are completely preempted by federal law." Id. In analyzing the issue, the MSR Exploration court reasoned that:
Congress has expressed its intent that bankruptcy matters be handled in a federal forum by placing bankruptcy jurisdiction exclusively in the district courts as an initial matter. 28 U.S.C. § 1334(a). The mere fact that exclusive jurisdiction over a particular action is in the district courts would not necessarily mean that a later malicious prosecution action must be brought there. However, it does militate in that direction.
. . . .
[I]n a related vein, a mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code, 11 U.S.C. §§ 101 et seq., demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal. It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process.
. . . .
[Otherwise], the opportunities for asserting malicious prosecution claims would only be limited by the fertility of the pleader's mind and by the laws of the state in which the proceeding took place.
In short, the highly complex laws needed to constitute the bankruptcy courts and regulate the rights of debtors and creditors also underscore the need to jealously guard the bankruptcy process from even slight incursions and disruptions brought about by state malicious prosecution actions. To put it another *34 way, the problem here is not only one of state courts deciding issues of federal law in one manner or another. That is not an entirely unique situation, even when uniformity is required. The difficulty here goes much deeper. It is a question of state courts, in effect, interfering with the whole complex, reticulated bankruptcy process itself.
. . . .
Bankruptcy law does require uniformity, and that need persuaded the framers of the United States Constitution to expressly grant Congress the power "to establish ... uniform Laws on the subject of Bankruptcies throughout the United States." Art. I, § 8, cl. 4.
. . . .
It is true that in many circumstances state courts can, and do, resolve questions of federal law "with no difficulty." Nevertheless, the unique, historical, and even constitutional need for uniformity in the administration of the bankruptcy laws is another indication that Congress wished to leave the regulation of parties before the bankruptcy court in the hands of the federal courts alone. Of course, Congress did provide a number of remedies designed to preclude the misuse of the bankruptcy process. See, e.g., Fed. Bankr.R. 9011 (frivolous and harassing filings); 11 U.S.C. § 105(a) (authority to prevent abuse of process); 11 U.S.C. § 303(i)(2) (bad faith filing of involuntary petitions); 11 U.S.C. § 362(h) (willful violation of stays); 11 U.S.C. § 707(b) (dismissal for substantial abuse); 11 U.S.C. § 930 (dismissal under Chapter 9); 11 U.S.C. § 1112 (dismissal under Chapter 11). That, too, suggests that Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents.
Id. at 913-915 (citations and footnotes omitted).
The ninth circuit declined the debtor's invitation "for a world where the specter of additional litigation must haunt virtually every actor in a bankruptcy proceeding," holding that the debtor's malicious prosecution action "is completely preempted by the structure and purpose of the Bankruptcy Code." Id. at 916; see Lowenschuss v. Whitney, 107 F.3d 877, 1997 WL 103438, at *3 (9th Cir.1997); Saks v. Parilla, Hubbard & Militzok, 67 Cal.App.4th 565, 79 Cal.Rptr.2d 120, 121 (1998) (citing MSR Exploration, 74 F.3d at 910); Pauletto v. Reliance Ins. Co., 64 Cal.App.4th 597, 75 Cal.Rptr.2d 334, 340 (1998) (holding that cause of action for malicious prosecution is preempted by the Bankruptcy Code because "state-law tort claims impermissibly intrude upon exclusive federal authority over bankruptcy proceedings and threaten the uniformity of federal bankruptcy law regardless of the nature of the underlying proceeding"); Raymark, 1997 WL 35933, at *11 (holding that allowing state tort claims "based upon exclusively federal conduct such as the filing of a bankruptcy petition, when Congress has created a comprehensive Bankruptcy Code to address any misuse, would unnecessarily interfere with the scheme created by Congress"); Rogers v. Credit Fin. Servs. Corp., 233 B.R. 98, 109 (Bankr.N.D.Cal. 1999) (applying MSR Exploration reasoning); Bessette v. Avco Fin. Servs., Inc., 240 B.R. 147, 162 (Bankr.D. R.I.1999).
The recent cases of Prince v. MacDonald, 237 Mich.App. 186, 602 N.W.2d 834 (1999), appeal denied, 611 N.W.2d 795 (Mich.2000), and In re Tan, No. 95B 25570, 1999 WL 253108, at *3 (Bankr.N.D.Ill. Apr.26, 1999), found no preemption of state law claims. However, Prince is distinguishable from this case and MSR Exploration; in Prince the plaintiff's cause of action did not arise from the defendant's "misuse of the bankruptcy proceeding." 602 N.W.2d at 838. Similarly, Tan is distinguishable because the causes of action for fraud and breach of fiduciary duty pursued under state law in that case were based on acts committed outside of the bankruptcy proceedings, "before the Debtor sought relief in bankruptcy." 1999 WL *35 253108 at *3. Other cases where preemption has not been found typically involve state statutory causes of action. See, e.g., Sears, Roebuck & Co. v. O'Brien, 178 F.3d 962, 967 (8th Cir.1999) (holding that bankruptcy law did not preempt a claim under an Iowa statutory cause of action, but on the basis that the area impacted by the statute was an "arena ... of local concern" and "the state law present[ed] no obstacle to the full enjoyment of ... federal rights"); Sturm v. Providian Nat'l Bank, 242 B.R. 599, 602 (Bankr.S.D.W.Va.1999) (holding that claim under West Virginia statute was not preempted by the Bankruptcy Code based on reasoning of Sears, Roebuck). In contrast, Mullin's claim, like the plaintiff in MSR Exploration and its progeny, arose from actions the defendant allegedly committed during the bankruptcy proceeding itself.
Because allowing Mullin to pursue her claim of malicious prosecution in state court would unnecessarily infringe on the uniformity envisioned by the Bankruptcy Code's vast array of remedies, and would contribute to "a world where the specter of additional litigation must haunt virtually every actor in a bankruptcy proceeding," MSR Exploration, 74 F.3d at 916, I would prefer that this court en banc recede from our decision in LaRoche and hold that Mullin's state tort law claim is preempted by the Bankruptcy Code.