**Richard L. FUQUA, Appellant,**

v.

**Thomas GRABER and Hopkins & Sutter, Appellees.**

No. 13–03–135–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

March 3, 2005.

---

Richard L. Fuqua, Fuqua & Keim, Houston, pro se.

Robert H. Mow Jr., Jaime Levergen Bryan, Walter G. Pettey, III, Hughes & Luce, Dallas, Raymond L. Thomas, Rebecca Vela, Kittleman, Thomas, Ramirez & Gonzalez, McAllen, for appellees.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

## OPINION

Opinion by Justice YAÑEZ.

Appellant, Richard L. Fuqua, filed this malicious prosecution suit in state court against appellees, Thomas Graber, an attorney, and Graber's law firm, Hopkins and Sutter. Fuqua contends that appellees, acting on behalf of a client, Sunbelt Savings, wrongfully filed an adversary proceeding in Fuqua's then-pending bankruptcy case. Appellees filed a plea to the jurisdiction, contending that because Fuqua's claim is premised on an adversary proceeding in a bankruptcy case, it is preempted by federal bankruptcy law. The trial court granted appellees' plea to the jurisdiction and dismissed Fuqua's claim. In a single issue, Fuqua contends the trial court erred in granting the plea to the jurisdiction. We agree, and reverse and remand to the trial court for proceedings consistent with this opinion.

## I. BACKGROUND

In 1987, Fuqua (also an attorney) represented a purchaser in a transaction to purchase a horse farm in Kentucky. To finance the purchase, Fuqua's client and several associates structured a separate real estate transaction designed to generate excess funding in an amount equal to the purchase price of the horse farm.

In 1988, for reasons unrelated to the horse-farm transaction, Fuqua filed for bankruptcy. In 1989, appellees (representing Sunbelt) filed an adversary proceeding in Fuqua's bankruptcy case, alleging fraud in connection with the horse-farm transaction. Fuqua alleges that appellees provided false and misleading information about him to the Justice Department and that they participated in a criminal referral to the Justice Department. The Justice Department began investigating the allegations and intervened in the adversary proceeding. As a result, the bankruptcy judge stayed any actions by Fuqua in the adversary proceeding pending completion of the investigation. The criminal investigation resulted in Fuqua's indictment in 1992. Between his indictment in 1992 and his 1994 trial (in which he was acquitted of any criminal wrongdoing), Fuqua was discharged by the bankruptcy court in 1993 and his bankruptcy case was closed. The adversary proceeding remained pending in the bankruptcy court. Following Fuqua's acquittal on the criminal charges, the adversary proceeding went to trial. The bankruptcy court granted a directed verdict in Fuqua's favor in the adversary proceeding and judgment was entered in his favor on May 13, 1997.

In September 2000, Fuqua filed this suit for malicious prosecution in state district court. Appellees filed a plea to the jurisdiction, contending that because Fuqua's claim was premised on the prior adversary proceeding, it was preempted by federal bankruptcy law. Following a hearing,[1] the

---

1. The trial court set a hearing on appellees' plea to the jurisdiction for November 25, 2002. On November 12, 2002, Fuqua filed a motion for continuance on grounds that he was scheduled to be in trial in another case on that date and was unable to attend the

trial court granted appellees' plea to the jurisdiction and dismissed the suit. Fuqua filed a motion for new trial, which the trial court denied. This appeal ensued.

## II. STANDARD OF REVIEW

▇▇▇▇ Whether a trial court has subject-matter jurisdiction is a legal question that we review *de novo*.[2] When reviewing a trial court order dismissing a cause for want of jurisdiction, Texas appellate courts "construe the pleadings in the plaintiff's favor and look to the pleader's intent."[3]

▇▇▇▇ The purpose of a plea to the jurisdiction is to defeat a cause of action without regard to whether the claims asserted have merit.[4] "In deciding a plea to the jurisdiction, a court may not weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry."[5] The court must presume in favor of jurisdiction unless lack of jurisdiction affirmatively appears on the face of the petition.[6] If a claim is not within a court's jurisdiction, and the impediment to jurisdiction cannot be removed, then it must be dismissed.[7]

## III. ANALYSIS

### A. Fuqua's Pleadings

▇▇▇▇ "To prevail in a suit alleging malicious prosecution of a civil claim, the plaintiff must establish: (1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in plaintiff's favor; and (6) special damages."[8]

We begin by addressing the allegations in Fuqua's pleadings. In his second amended petition, Fuqua alleges that appellees "knowingly, maliciously, and wantonly acted without probable cause in initiating" a civil adversary proceeding against him. He contends that during the course of the proceeding, appellees provided false and misleading information to the Justice Department, which eventually resulted in his indictment for bank fraud and tax fraud. He also alleges appellees acted maliciously in initiating a criminal proceeding against him as an adjunct to the civil proceeding. Fuqua contends that the civil and subsequent criminal actions were all terminated in his favor. Fuqua alleges that as a result of appellees' conduct, he suffered damages in the form of injury to his reputation and costs associated with his defense. He alleges he suffered special damages in that as a result of appellees' conduct, he was indicted and subsequently

hearing. The trial court denied Fuqua's motion for continuance and proceeded with the hearing in his absence. No record of the hearing is included in the record before us. Following the trial court's granting of appellees' plea and dismissal of the case, Fuqua filed a motion for new trial, arguing that he was denied an opportunity to be heard. The trial court denied the motion.

2. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *see also Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

3. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002); *Tex. Ass'n of Bus. v. Tex.*

*Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

4. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000).

5. *Brown*, 80 S.W.3d at 555.

6. *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989).

7. *Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 805 (Tex.2001).

8. *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207–08 (Tex.1996).

tried for bank fraud.[9] We conclude Fuqua has alleged a cause of action for malicious prosecution based on appellees' allegedly improper conduct in Fuqua's bankruptcy proceeding.

### B. Preemption

■ The issue before us is apparently one of first impression in Texas: whether Fuqua's claim for malicious prosecution is preempted by federal bankruptcy law. Appellees contend federal law preempts Fuqua's claim "by implication."

■ Federal preemption of state law causes of action is appropriate if Congress expressly legislates such preemption, or if Congressional intent can be implied from the federal legislation.[10] If Congress has legislated comprehensively and occupied an entire field of regulation, leaving no room for supplemental state regulation, preemption is implied.[11] State law is also preempted to the extent it actually conflicts with federal law or interferes with the accomplishment and execution of Congressional objectives.[12] Appellees argue that the bankruptcy code includes remedial provisions and sanctions designed to

deter and punish improper use of the bankruptcy process. Because Fuqua's claim alleges improper use of the bankruptcy courts to file and prosecute an adversary proceeding, appellees argue the extensive scheme of remedies in the bankruptcy code preempts his state law claim.

■ Although Congress has given the federal district courts "original and exclusive jurisdiction of all cases *under* title 11,"[13] the district courts do not have "exclusive jurisdiction of all civil proceedings *arising under* title 11 or *arising in or related to* cases under title 11."[14] Thus, the district courts and their bankruptcy units have exclusive jurisdiction only over "the bankruptcy petition itself."[15] In other matters "arising in" or "related to" title 11 cases, unless the bankruptcy code provides otherwise, state courts have concurrent jurisdiction.[16]

■ This Court has previously held that "the mere pendency of a bankruptcy action does not automatically deprive a State court of all jurisdiction."[17] "In order to preclude a State court's jurisdiction, the state claim must interfere with the jurisdiction of the Bankruptcy Court."[18]

---

9. We are mindful of our limited role here. Our task is not to determine whether the plaintiff ultimately wins or loses on judicial review; rather, this Court's task is to examine the facts pleaded and to determine whether those facts support jurisdiction in the trial court. *See Univ. of Tex. Med. Branch v. Hohman*, 6 S.W.3d 767, 771 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.).

10. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).

11. *See id.* at 79, 110 S.Ct. 2270; *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (stating when Congress intends federal law to "occupy the field," state law in that area is preempted).

12. *English*, 496 U.S. at 79, 110 S.Ct. 2270.

13. The law relating to bankruptcy is codified and enacted as title 11 of the United States Code. *See generally* 11 U.S.C. § 101 (2004).

14. *See* 28 U.S.C.A. §§ 1334(a), (b) (West 2004) (emphasis added); *In re Brady, Mun. Gas Corp.*, 936 F.2d 212, 218 (5th Cir.1991); *see also In re Epstein*, 314 B.R. 591, 599–600 (Bkrtcy.S.D.Tex.2004).

15. *See In re Wood*, 825 F.2d 90, 92 (5th Cir. 1987).

16. *In re Brady*, 936 F.2d at 218; *In re Epstein*, 314 B.R. 591 at 599–600 (quoting *Brady*).

17. *Dunn v. Menassen*, 913 S.W.2d 621, 623 (Tex.App.-Corpus Christi 1995, writ denied).

18. *Id.* at 624.

In *Dunn*, we held that a trial court did not err in failing to abate a state court action because of the pendency of a bankruptcy where the bankruptcy was concluded sixteen months *before* the trial of the state action and *before* the hearing on the plea in abatement.[19]

Here, Fuqua was discharged by the bankruptcy court in 1993. Judgment was entered in Fuqua's favor in the adversary proceeding on May 13, 1997. Sunbelt appealed and the appeal was dismissed on September 8, 1998. Thus, Fuqua's cause of action for malicious prosecution did not become final until September 8, 1998, when the appeals process in the adversary proceeding was exhausted.[20] Thus, Fuqua's malicious prosecution claim did not accrue until five years *after* he was discharged in bankruptcy.[21]

We conclude that Fuqua's state law claim for malicious prosecution cannot interfere with the bankruptcy court's jurisdiction and that the state court's jurisdiction is therefore not precluded.[22]

We have found no Texas or Fifth Circuit authority directly addressing whether state claims for malicious prosecution are preempted by the bankruptcy code. In support of their argument in favor of preemption, appellees urge us to adopt the reasoning and holdings in: *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d

910, 916 (9th Cir.1996); *Gonzales v. Parks*, 830 F.2d 1033, 1035 (9th Cir.1987); *Miles v. Okun (In re Miles)*, 294 B.R. 756, 761 (9th Cir. BAP 2003); *Glannon v. Garrett & Assoc.*, 261 B.R. 259, 266 (D.Kan.2001); *Ross v. Universal Studios Credit Union*, 95 Cal.App.4th 537, 115 Cal.Rptr.2d 712 (2002); *Pauletto v. Reliance Ins. Co.*, 64 Cal.App.4th 597, 75 Cal.Rptr.2d 334 (1998); and *Shiner v. Moriarty*, 706 A.2d 1228, 1238 (Pa.Super.1998).

Appellees rely on several grounds for their contention that state law claims for malicious prosecution are preempted by the bankruptcy code. First, "Congress has expressed its intent that bankruptcy matters be handled in a federal forum by placing bankruptcy jurisdiction exclusively in the district courts as an initial matter."[23] "The fact that federal courts have exclusive jurisdiction over bankruptcy matters indicates Congressional intent to preempt state remedies."[24] Second, the comprehensive nature of the bankruptcy code "demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike."[25] "Congress'[s] authorization of certain sanctions for the filing of frivolous bankruptcy petitions should be read as an implicit rejection of other penalties, including the kind of substantial damage

19. *Id.*

20. *See Tex. Beef Cattle Co.*, 921 S.W.2d at 208 (holding that "an underlying civil suit has not terminated in favor of a malicious prosecution plaintiff until the appeals process for that underlying suit has been exhausted.").

21. *See id.* at 207–08 (holding termination in plaintiff's favor is element of cause of action for malicious prosecution); *see also Toranto v. Wall*, 891 S.W.2d 3, 6 (Tex.App.-Texarkana 1994, no writ) (noting that cause of action for malicious prosecution accrues when underlying civil suit terminates).

22. *See Dunn*, 913 S.W.2d at 623–24.

23. *Glannon v. Garrett & Assoc.*, 261 B.R. 259, 264 (D.Kan.2001) (quoting *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 913 (9th Cir.1996)).

24. *See id.*

25. *Id.* (quoting *MSR Exploration*, 74 F.3d at 913).

awards that might be available in state court tort suits."[26] Third, preemption of state law malicious prosecution claims furthers Congress's policy of creating uniformity in the bankruptcy code. "[T]he unique, historical, and even constitutional need for uniformity in the administration of the bankruptcy laws is another indication that Congress wished to leave the regulation of the parties before the bankruptcy court in the hands of the federal courts alone."[27] Finally, "allowing state court remedies for wrongful filings could discourage entry into the bankruptcy system."[28]

We recognize that a majority of courts that have considered the preemptive nature of bankruptcy law in the context of state tort claims alleging violations of the bankruptcy process have found such claims to be preempted.[29]

In *Gonzales,* the Ninth Circuit held that a state court lacked subject matter jurisdiction to hear a claim that a debtor's filing of a voluntary bankruptcy petition was an abuse of process.[30] In *Gonzales,* the plaintiffs defaulted on an obligation, and the defendants sought to foreclose a

deed of trust on their property.[31] Plaintiffs filed a voluntary bankruptcy petition, halting the sale.[32] The defendants filed an action in state court, claiming that the plaintiffs' bankruptcy filing was an abuse of process.[33] After the state court granted a default judgment against the plaintiffs, they filed an adversary proceeding in the bankruptcy court, seeking relief from the state court judgment.[34] The bankruptcy court declared the state court judgment void as violative of the automatic stay provision of the bankruptcy code.[35] On appeal, the Ninth Circuit held the state judgment was void because the grant of exclusive jurisdiction to federal courts over bankruptcy petitions precluded collateral attacks on such petitions in state courts.[36] Thus, unlike the present case, the state court action at issue in *Gonzales* was instituted during the pendency of the bankruptcy.[37]

In *MSR,* certain creditors of MSR filed claims against it in MSR's bankruptcy proceeding.[38] The bankruptcy court disallowed the creditors' claims.[39] After MSR's reorganization plan was confirmed, it brought a claim for malicious prosecution

---

26. *Id.* at 264–65 (quoting *Gonzales v. Parks,* 830 F.2d 1033, 1036 (9th Cir.1987)).

27. *Id.* at 265 (quoting *MSR Exploration,* 74 F.3d at 915).

28. *Id.* (citing *Gonzales,* 830 F.2d at 1036 ("Even the mere possibility of being sued in state court could in some instances deter persons from exercising their rights in bankruptcy.")).

29. *See, e.g., MSR Exploration,* 74 F.3d at 916; *Gonzales,* 830 F.2d at 1035; *Miles v. Okun (In re Miles),* 294 B.R. 756, 761 (9th Cir. BAP 2003); *Glannon,* 261 B.R. at 266; *Ross v. Universal Studios Credit Union,* 95 Cal. App.4th 537, 115 Cal.Rptr.2d 712 (2002); *Pauletto v. Reliance Ins. Co.,* 64 Cal.App.4th 597, 75 Cal.Rptr.2d 334 (1998); *Shiner v. Moriarty,* 706 A.2d 1228, 1238 (Pa.Super.1998).

30. *Gonzales,* 830 F.2d at 1035.

31. *Id.* at 1033.

32. *Id.*

33. *Id.* at 1033–34.

34. *Id.*

35. *Id.*

36. *Id.* at 1035.

37. *Id.* at 1033–34.

38. *MSR Exploration,* 74 F.3d at 912.

39. *Id.*

in federal district court, based on the creditors' disallowed claims.[40] Citing *Gonzales*, the Ninth Circuit held that MSR's claim for malicious prosecution was preempted by the bankruptcy code and should have been brought in the bankruptcy court itself, not as a separate action.[41]

In *Miles*, a bankruptcy panel for the Ninth Circuit held that section 303(i)[42] of the bankruptcy code, which provides for fees, costs, and damages to be awarded against a bad-faith involuntary petitioner, preempts state tort actions premised on the filing and prosecution of involuntary bankruptcies.[43] In *Miles*, a feud between neighbors resulted in the filing of involuntary bankruptcy petitions against the alleged debtors.[44] The bankruptcy court ruled that one of the petitions was filed in bad faith, dismissed the petitions, and awarded costs and attorneys' fees to the alleged debtors.[45] After the petitions were dismissed, one of the alleged debtors and her children filed tort actions in state court seeking damages for the filing and prosecution of the involuntary petitions.[46] After the defendants removed the actions to bankruptcy court, the bankruptcy court dismissed the complaints, holding that the plaintiffs' claims were preempted by section 303(i) of the bankruptcy code.[47] The Ninth Circuit panel affirmed the dismissal of the plaintiffs' state law claims.[48] The

court held that the plaintiffs' claims for damages were "inextricably part of the parent bankruptcy case."[49] Thus, we find the circumstances in *Miles*, where the plaintiffs were seeking state tort damages *in addition to* the fees and costs already awarded by the bankruptcy court for the bad-faith filing of involuntary petitions, distinguishable from the present case.

Following the Ninth Circuit's decisions in *Gonzales* and *MSR*, a California appellate court held, in *Pauletto*, that the plaintiffs' state law claims for malicious prosecution (based on allegedly malicious filings in a bankruptcy proceeding) were preempted by federal bankruptcy law.[50] In that case, the Paulettos, owners of a construction business, filed a voluntary bankruptcy proceeding.[51] The Paulettos' sureties filed an adversary proceeding for a determination that the Paulettos' indebtedness to them was not dischargeable.[52] The bankruptcy court entered judgment in favor of the Paulettos.[53] The Paulettos then filed suit in state court for malicious prosecution and abuse of process based on the allegedly improper filing of the adversary proceeding.[54] The state court held that it lacked subject matter jurisdiction over the Paulettos' claims.[55] The California appellate court affirmed, holding that "no authorized bankruptcy proceeding can properly support a state-law claim for ma-

---

40. *Id.*

41. *Id.* at 916.

42. *See* 11 U.S.C. § 303(i) (2005).

43. *Miles*, 294 B.R. at 762–63.

44. *Id.* at 758.

45. *Id.*

46. *Id.*

47. *Id.*

48. *Id.*

49. *Id.* at 762.

50. *See Pauletto*, 64 Cal.App.4th at 605–06, 75 Cal.Rptr.2d 334.

51. *Id.* at 599, 75 Cal.Rptr.2d 334.

52. *See id.*

53. *See id.*

54. *See id.* at 603, 75 Cal.Rptr.2d 334.

55. *Id.* at 600, 75 Cal.Rptr.2d 334.

licious prosecution or abuse of process."[56] The *Pauletto* court noted that "[t]he essential preemption question is not whether the particular state-law remedy the Paulettos seek could be obtained in bankruptcy court, but whether the availability of other remedies under the federal scheme precludes their pursuit of a state-law remedy outside the bankruptcy system."[57] It is unclear in *Pauletto* whether the Paulettos' bankruptcy proceeding was already dismissed when they filed their claim in state court for malicious prosecution.[58] We recognize, however, that the *Pauletto* court's holding did not address whether any remedy remained available to the Paulettos. Rather, the court held, without qualification, that "[a] party aggrieved by bad faith and malicious filings in bankruptcy court is limited to the remedies provided by the Federal Bankruptcy Code and the Federal Rules of Bankruptcy Procedure."[59]

In *Ross*, another California appellate court, addressing a matter "on all fours with *Pauletto*," held that the appellant's state-law claims of malicious prosecution were preempted by federal bankruptcy law.[60] After Ross filed for bankruptcy, a creditor filed an adversary proceeding requesting a determination that its judgment against him be declared nondischargeable.[61] After the bankruptcy court granted judgment in Ross's favor, he sued in state court alleging malicious prosecution and abuse of process based on the bank-

ruptcy court's judgment.[62] The state trial court held it had no jurisdiction and the appellate court affirmed.[63] The *Ross* court held that Ross's remedy was "limited to such satisfaction afforded to him in the bankruptcy court."[64] The court further noted that "Ross chose not to invoke the remedies available to him in the bankruptcy court and he may not circumvent them by filing a malicious prosecution action in state court."[65]

In *Shiner*, the Pennsylvania Superior Court held that the Shiners' state law claims, based on the defendants' allegedly improper filings in the bankruptcy court, were preempted by federal law.[66] The *Shiner* court concluded that "[t]he Bankruptcy Code permits no state law remedies for abuse of its provisions."[67]

In *Glannon*, a Kansas federal district court held that the plaintiff's state law malicious prosecution and abuse of process claims, based on the filing of an involuntary bankruptcy petition, the filing of an adversary proceeding, and the violation of an automatic stay, were preempted by the bankruptcy code.[68]

In addition to the cases cited by appellees, we note that a majority of courts that have considered the preemptive nature of bankruptcy law in the context of state tort claims alleging violations of the bankruptcy process have found such claims to be

56. *Id.* at 605, 75 Cal.Rptr.2d 334.

57. *Id.* at 606, 75 Cal.Rptr.2d 334.

58. *See id.* at 599, 75 Cal.Rptr.2d 334.

59. *Id.* at 606, 75 Cal.Rptr.2d 334.

60. *See Ross*, 95 Cal.App.4th at 539, 115 Cal.Rptr.2d 712.

61. *Id.*

62. *Id.*

63. *Id.* at 538–39, 115 Cal.Rptr.2d 712.

64. *Id.* at 542, 115 Cal.Rptr.2d 712.

65. *Id.*

66. *Shiner*, 706 A.2d at 1238.

67. *See id.*

68. *See Glannon*, 261 B.R. at 265.

preempted.[69] In contrast, only a few courts have held that the bankruptcy code permits state law remedies for abuse of its provisions.[70]

In *Mullin*, the Florida District Court of Appeals relied on its decision in *R.L. LaRoche, Inc. v. Barnett Bank of South Florida*, 661 So.2d 855, 857 (Fla.Dist.Ct.App. 1995) (holding state courts had jurisdiction to hear and determine debtor's state law claims related to alleged bad faith filing of an involuntary bankruptcy petition), in holding that the state court had jurisdiction to consider Mullin's malicious prosecution claim following the bankruptcy court's dismissal of an involuntary petition for bankruptcy filed against her.[71] After an involuntary bankruptcy petition was filed against her, Mullin sought a dismissal of the petition from the bankruptcy court, but did not request or plead for punitive damages or any other damages associated with the bad-faith filing of the petition, other than for attorneys' fees and costs.[72] The bankruptcy court dismissed the petition, stating it had been prosecuted "in bad faith and for an inappropriate purpose."[73] Mullin filed a malicious prosecution complaint in state court, seeking damages associated with the bad-faith filing of the petition.[74] The defendants moved for summary judgment, contending the state court lacked jurisdiction due to federal preemption of Mullin's claims.[75] The trial court granted summary judgment in favor of the defendants, based on its finding that Mullin's "claims were available in the previous bankruptcy action."[76] Relying on its holding in *LaRoche*, the Florida Court of Appeals reversed the summary judgment.[77] In a separate concurring opinion, Justice Gross noted that since the court's decision in *LaRoche*, the majority of courts considering the issue have held in favor of preemption.[78] Justice Gross concluded by expressing his preference that the court "recede from [its] decision in *LaRoche* and hold that Mullin's state tort law claim is preempted by the Bankruptcy Code."[79]

*LaRoche* involved facts very similar to those in *Mullin:* following the bankruptcy court's dismissal of an involuntary bankruptcy petition filed against LaRoche (the debtor), it filed suit in state court for malicious prosecution arising from the filing of the petition.[80] The trial court dismissed the claims on the grounds that the bankruptcy court had exclusive jurisdiction over such claims.[81] After noting that there is "no clear authority in the federal courts directly on point,"[82] the *LaRoche* court questioned some of the arguments sup-

69. *See, e.g., Lewis v. Chelsea G.C.A. P'ship, L. P.*, 86 Conn.App. 596, 604, 862 A.2d 368 (2004) (citing cases); *see also Mullin v.Orthwein*, 772 So.2d 30, 32–33 (Fla.Dist.Ct.App. 2000) (per curiam) (Gross, J., concurring) (citing cases, noting that "judicial landscape in this area of law has considerably developed.").

70. *See, e.g., Mullin*, 772 So.2d at 34–35 (listing cases); *see also Powell v. Wash. Land Co., Inc.*, 684 A.2d 769, 772 n. 9 (D.C.1996) (listing cases).

71. *Mullin*, 772 So.2d at 30.

72. *Id.* at 32 (Gross, J., concurring).

73. *Id.* at 31.

74. *Id.*

75. *Id.*

76. *Id.* at 32.

77. *Mullin*, 772 So.2d at 30.

78. *Id.* at 32–33 (Gross, J., concurring).

79. *Id.* at 35.

80. *LaRoche*, 661 So.2d at 857.

81. *Id.*

82. *See id.* at 859.

porting preemption. In response to the argument that state court adjudication of malicious prosecution claims would impair the right of access to the bankruptcy court, the court noted that it could not discern "how *Gonzales* concluded that *good faith* petitioners would also be discouraged by state court adjudications of bad faith." [83] The court continued:

> It is not immediately obvious to us how damage awards against creditors who have filed involuntary petitions in bad faith—which we take to mean dishonestly and without any pretense of a legal and factual basis for so doing—would deter creditors who have a good faith basis in law and fact to seek such relief. Concededly, such awards would dissuade bad faith creditors, but that seems a result that Congress itself intended. After all, section 303(i)(2) quite specifically allows the bankruptcy court to assess costs, fees and punitive damages against a creditor whom the court has found to have filed an involuntary petition in bad faith. It is thus indisputable that Congress contemplated, at least to that extent, to engage in some deterrence of bad faith involuntary filings.
>
> All creditors who contemplate filing an involuntary petition under section 303, therefore, already face the prospect that a court may determine that they acted in bad faith. *Gonzales* did not explain why bankruptcy court adjudications of bad faith filings under section 303(i)(2) would not hinder good faith creditor access, but that state court adjudications would necessarily do so. Stated conversely, it is not immediately apparent how the prospect of state courts doing what the bankruptcy courts already can do might deter good faith filers. We are

simply unable to discern a rationale for the dictum in *Gonzales*. [84]

In response to the argument that the need for uniformity in the administration of bankruptcy laws reflects Congress's intent to leave the regulation of parties before the bankruptcy court in the hands of the federal courts alone, the court noted that

> Congress may simply have believed that any resulting mosaic [of jurisprudence], an inevitable feature of our system under the Tenth Amendment, is not necessarily undesirable.... It is not farfetched to assume that Congress intended that the several states be free to punish [creditors who have abused the system] under their own laws, in their own courts. And, in any event, there is a single overseer for the system in the United States Supreme Court, which can always narrow such causes of action to specific elements and proof if state decisions have the effect of interfering with the primacy of federal bankruptcy law. [85]

Finally, the *LaRoche* court noted that "[t]he Supreme Court has long applied a rebuttable presumption that, when Congress is silent on whether federal court jurisdiction is exclusive, state courts have concurrent jurisdiction of claims arising under federal law." [86] Thus, the *LaRoche* court concluded that "because there is no express grant of exclusive jurisdiction for these claims to the bankruptcy court and no strong reason to suppose that Congress gave such power by implication," the state court therefore has jurisdiction over state law claims for malicious prosecution based on the bad-faith filing of an involuntary

---

83. *Id.* at 862 (emphasis in original).

84. *Id.*

85. *Id.* at 863.

86. *Id.*

petition.[87]

We recognize that the *LaRoche* court's analysis turns primarily on the question of *jurisdiction,* in contrast to the issue of *preemption.* We emphasize that several courts have accurately noted the distinction. In *Shiner,* the court stated:

> The trial court concluded that the wrongful use of process claim for damages resulting from the filing of certain papers in the U.S. Bankruptcy Court was properly brought in state court. Opinion, dated May 21, 1997, at 10–11. We must first note that the trial court has misstated the issue. The issue is not whether the trial court could exercise *jurisdiction* over the controversy. Rather, the issue is *whether the application of state tort law to the particular issue was pre-empted by the Bankruptcy Code.* ... The issue is whether a wrongful use claim exists, or is it preempted by the remedies available under the Bankruptcy Code.[88]

Similarly, in *Pauletto,* the California Court of Appeals noted:

> The issue before us is not whether the *jurisdictional* language of section 1334 of title 28 of the United States Code technically or theoretically would allow a state court malicious prosecution claim based on an underlying bankruptcy proceeding, *but whether allowance of such a claim conflicts with the Bankruptcy Code's overall scheme of remedies* and threatens Congress's objectives of uniformity in bankruptcy law and exclusive federal jurisdiction over bankruptcy proceedings. The *general jurisdictional provisions of section 1334 of title 28 of the United States Code are immaterial to our implied preemption analyses* based on *Gonzales, Gene R. Smith Corp.* [*v. Terry's Tractor, Inc.*], [209 Cal. App.3d 951, 257 Cal.Rptr. 598 (1989)] *Idell* [*v. Goodman*], [224 Cal.App.3d 262, 273 Cal.Rptr. 605 (1990)] *Koffman* [*v. Osteoimplant Technology, Inc.*], [182 B.R. 115 (1995)] and *MSR Exploration, Ltd.*[89]

The narrow issue before us in the present case is whether the trial court erred in: (1) holding that it lacked jurisdiction over Fuqua's claim for malicious prosecution because such claims are preempted by federal bankruptcy law; and (2) dismissing his claim. As noted above, Fuqua's malicious prosecution claim did not accrue until five years after he was discharged in bankruptcy. Relying on our holding in *Dunn,* we have concluded that Fuqua's malicious prosecution claim could not have interfered with the bankruptcy court's jurisdiction, and that the state court's jurisdiction is therefore not precluded.[90] Thus, the state court has jurisdiction over Fuqua's malicious prosecution claim *unless* we determine that it is preempted by the bankruptcy code.

In the absence of any binding authority, on the facts of the present case, we decline to speculate that Congress intended Fuqua's claim for malicious prosecution to be preempted by federal bankruptcy law. We agree with the *LaRoche* court that "the mere fact that Congress might have decided to allow bankruptcy court monetary awards against creditors who file in bad faith does not necessarily produce the conclusion that Congress intended to give these claims exclusively to the bankruptcy

---

87. *Id.* at 864.

88. *Shiner,* 706 A.2d at 1237 (emphasis added).

89. *Pauletto,* 64 Cal.App.4th at 606, 75 Cal. Rptr.2d 334 (emphasis added).

90. *See Dunn,* 913 S.W.2d at 623–24.

courts." [91] We also share the *LaRoche* court's view that "[i]f [our] reading of the bankruptcy jurisdictional statute is incorrect, we are comforted by the knowledge that the Supreme Court can tell us so, or Congress can make its wishes express." [92]

We REVERSE the trial court's order granting appellees' plea to the jurisdiction and REMAND the cause to the trial court for proceedings consistent with this opinion.

**91.** *LaRoche,* 661 So.2d at 863.

**92.** *Id.* at 864.